## In re MAPES' ESTATE.

(*Surrogate's Court, Orange County.* April 16, 1890.)

CORPORATIONS—STOCK—OWNERSHIP—POSSESSION.

A brother and a sister each executed a receipt to their father's executors for one-half of certain stock belonging to the father's estate. There was no proof, however, that any of the stock, which was considered as almost valueless, ever came into the sister's possession. She died before her brother, and on the latter's death, some time thereafter, the shares were found among his effects. *Held*, that the legal presumption arising from the brother's possession of the stock was that of ownership in him, though no written transfer of the sister's interest was in existence.

Proceedings by the executors of Sarah J. Mapes, deceased, for the discovery of property belonging to her estate, and alleged to be withheld by the administrator of John S. Mapes, deceased.

B. R. *Champion,* for executors of Sarah J. Mapes, deceased. W. D. *Mills,* for administrator of John S. Mapes, deceased.

COLEMAN, S. This is a proceeding taken under section 2706 of the Code of Civil Procedure to discover property withheld, etc. George H. Mapes, the person cited, who is the administrator of John S. Mapes, deceased, filed a verified answer in which he admits having possession of the property mentioned, and denies the petitioners' claim thereto; however expressly submitting, for decision by the surrogate, the question in dispute between the two estates, to which estate the property in question belongs. The property consists of two certificates for 23 shares of the capital stock of the Louisville, New Albany & Chicago Railroad Company. These identical certificates belonged to the estate of George Mapes, deceased, the father of John S. Mapes and Sarah J. Mapes. In September, 1884, John S. and Sarah J. each gave a receipt to the executors of George for one-half of the stock. Sarah died, July 24, 1888. Shortly after her death John and the two executors of Sarah came to the law office of B. R. Champion in Goshen, when, as appears from the testimony of Mr. Champion, John produced a tin box, from which was taken two $1,000 railroad bonds, one of which was conceded to belong to Sarah's estate, and it was then delivered to her executors. There was also in the box, from which was taken the two certificates in question, some silver certificates and other papers, in regard to which Mr. Champion then said: "Here is that same stock again we had in the settlement of the estate of John's father. I don't know that it is worth anything. You may as well leave it in the box." And all the papers found in the box, except the bond given to Sarah's executors. were left in it, and the box was taken away by John, and at his death the two certificates in question were found among his effects. There is no proof that the certificates were ever in Sarah's actual possession. They are supposed to have been in the box produced by John on the occasion referred to, of which she had possession until her death, but there is no proof that they were. The possession of the certificates by John is evidence of his ownership of the stock, which can only be overcome by evidence that the presumption is not true. This I do not think has been done. It is not necessary for John's administrator to prove the way in which the title to the stock passed from Sarah or her executors to John. A written transfer of Sarah's interest is not necessary, and the absence of such a transfer is accounted for by the fact that the stock was not considered of sufficient value, to have this done; indeed the stock had never been transferred to them by the executors of their father. We may think that it is improbable that, Sarah gave or sold her stock to John, and so, too, we can imagine that she did so, but these speculations do not prove anything either way. We must, therefore, fall back on the legal inferences which arise from the facts, proven, which, while they may not bring conviction, will, however, effect a disposition of the question on settled legal principles. I, therefore, conclude from the evidence before me that the stock belonged to John S. Mapes at his death, and that his administrator is entitled to the possession of the certificates.